No. 10,850.

## MRS. MARY A. KELLY VS. JOSEPH D. TAYLOR.

1. A wall of brick, which is used in common as the wall of two adjacent properties in a city or town, is a party-wall, if erected partly on the soil of each, and has been so *used* for many years, without question or complaint by either.

2. When each of said parties, by actual measurement, appears to possess a *little* beyond the boundaries fixed in his title, neither is at liberty to question the encroachment of the other, in order to disturb the *status quo* between them.

3. In such case the acts, conduct and apparent acquiescence of the parties respectively, serve to interpret questions of doubt between them, and courts of justice will not readily interfere therewith.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Henry P. Dart* for Plaintiff and Appellee.

*J. Q. A. Fellows* and *J. B. Rosser, Jr.*, for Defendant and Appellant:

1. Land sold in parcels by the owner of the whole, by fixed measurements, the first purchasers take only what their titles call for, and the last purchaser takes the remainder of the tract, more or less. Savage vs. Foy, 7 An. 573; Lacour vs. Watson, 12 An. 214; C. C. 841, 843, 844, 845, 846, 847, 854.

2. There is no prescription to the action of boundary. Arcenaux vs. Benoit, 21 An. 973; C. C. 825.

3. Where it is found, on survey, that the wall of a house has encroached on the adjoining lot more than half its thickness, and the party desiring to make it a wall in common consents to make the centre of the wall the division line, the presumption, in the absence of proof, after thirty years has elapsed, is, that the portion thus surrendered was in consideration of half the cost of the wall, and is added to the lot of the one who constructed the wall. C. C. 2285 (2), 2288; 12 R. 471.

4. A wall, only thirteen inches thick, of a brick building constructed forty or fifty years ago, wholly or within one-fourth of an inch on the lot of the builder, and no brick or other substantial building has ever been built alongside of it, by which the wall is used as a part of a new building, the presumption is that it was not a wall in common; that such wall is the property of the builder, and he has the right to make openings therein and keep them open, until the owner of the adjoining lot shall make it a wall in common by paying half its cost and the value of the ground on which it stands, and for such as may be outside the wall of the lot of the original builder. Murrell Fowler, 3 An. 165; Durel vs. Boisblanc 1 An. 408, 197; Jeannin vs. DeBlanc, 11 An. 465; Costa vs. Whitehead, 20 An. 342; C. C. 676, 696.

5. In absence of later titles, the description of the last title in evidence, of the plaintiff's chain of titles, will bind him, and he can take no more than that title calls for.

The opinion of the court was delivered by

WATKINS, J.   The litigants are proprietors of adjoining premises situated on Carondelet street, in the City of New Orleans, which are indicated as numbers one (1) and two (2), on the sketch of the *locus in quo*, which we have extracted from the brief of defendant's counsel, as a means of enabling us to give a clearer and more exact expression of our views.

On the sketch, plaintiff's property is indicated by the figures 47 as having a front measurement on Carondelet street of forty-seven feet; and that of the adjoining premises is indicated by the figures 25, as having a front of twenty-five feet on said street:

Briqueterie or Carondelet Street.

The sketch shows the front of the square between Girod and Lafayette streets.

The houses of each of the proprietors are built of brick, are of two and one-half stories in height, with a *single wall* separating their *properties*.   Recently the defendant opened windows or openings in this intervening wall, and this suit is to compel him to close them.

The salient and leading averment of the plaintiff's petition is that the wall in question is a party wall, or a wall in common, and has been so established, recognized and used by the occupants of said two adjoining premises for more than thirty years, and that "no one has ever claimed or exercised the right to make openings in the same."

She charges that· said openings overlook the bedrooms in her house, and destroy its renting value.

Defendant, in answer, claims ownership of the adjoining lot to plaintiff's and the buildings thereon, and the *exclusive* ownership of the said intervening wall; and he also claims *four (4) inches of the soil beyond said wall*, and avers that said wall was constructed and now stands on his lot and property, and hence it is not a party wall, and plaintiff is without right of action or ground of complaint.

On the trial there was judgment in favor of the plaintiff, and the defendant has appealed.

The case was tried in the court below, upon expert testimony; and the experts consisted of three skilled and competent surveyors, Pilie, Grandjean and Brosnau, who seem, from their testimony, profiles, maps, etc., to have gone into the question thoroughly.

The testimony leaves no doubt of the fact that the defendant's building was erected on the lot (the municipal number of which is No. 157 Carondelet street) something like thirty years ago—perhaps longer.

Plaintiff traces title through Benjamin Kendig, who purchased from Charles Gardiner and heirs of A. Babcock, on the 4th of June, 1835, and by the following description, viz.:

"All that lot of ground situated in the suburb St. Mary,  *  *  * measuring forty-seven (47) feet front on Carondelet street, by eighty-two (82) feet in depth (opening about three feet in said depth), and giving about fifty feet, French measure, in the rear line; bounded on the side next to Hevia street by the *property* now, or formerly, belonging to Widow Brogard; and on the side next to Girod street by that now, or formerly, belonging to Edward Colesward; this lot of ground is sold by the boundaries, be the advertisement more or less than is above specified," etc.

This is the same description by which Babcock and Gardner purchased on the 18th of March, 1833, from the estate of Robert Lewis;

and the same description is given in the deed of Louis Robert, to Robert Lewis, on the 22d of September, 1831.

In 1818 this lot was conveyed by Jean Laurent to J. P. L'Aubry, as having a front of forty-seven (47) feet, French measure, or fifty (50) feet one (1) inch, American measure; and Jean Laurent seems to have derived title from his father Jean Louis Laurent subsequent to 1804—date not specified.

It appears from the profile and exhibits executed by Pilie and Grandjean jointly, that since 1833 the titles of plaintiff and of her authors call for a front measurement on Carondelet of fifty (50) feet and one (1) inch, American measure—just the same as that called for in the deeds of the Laurents in 1810–1818.

It also appears, from the same evidence, that in 1814, when the property of the defendant was owned by Genevieve Metoyer, her deed called for twenty-five (25) feet, French measure, or twenty-six (26) feet seven (7) inches and $\frac{6}{10}$, American measure.

The measurement is just the same in the deed of Euphrosine Durvieux in 1817.

And, in the deeds of the defendant, and his intermediate authors, the same American measurement is pursued, viz.: " *26' 7" 6''' fixed.*"

Thus it appears, irresistibly, to our minds, that the ancient boundaries of these two properties have been well and faithfully preserved.

While it is true that the said exhibits do show that the plaintiff *possesses* some seven (7) inches over and above the calls of her title, *i. e.,* " *50 feet 8 inches,*" instead of " *50 feet 1 inch,*" "more or less," yet they do not show that same was absorbed from the property of the defendant. For said exhibits show that, while defendant's titles call for twenty-six (26) feet seven (7) inches and $\frac{6}{10}$, he has *in possession* twenty-six (26) feet ten (10) inches and $\frac{5}{10}$—an *excess above the calls of his title*, of two (2) inches and seven-tenths ($\frac{7}{10}$) of an inch.

They also show that Fannie Chotard, on corner of Girod and Carondelet, occupies two (2) inches and three-tenths ($\frac{3}{10}$) less than her titles call for; and that the M. E. Church (which adjoins the plaintiff on the Canal street side) is in possession of one (1) foot and three inches and $\frac{5}{10}$ths less than the calls of its title. But, as there is an alleyway intervening between the plaintiff and the church edifice, that may be easily adjusted. The defence set up is not good.

In addition to the foregoing argument, we incline to the belief that the title of the plaintiff's authors was one *per aversionem*, being a designated space within *fixed* boundaries that have never been changed.

In relation to the actual *situs* of the wall in controversy, the evidence satisfies us that it only impinges on the plaintiff's premises to the extent of about $\frac{5}{10}$ths of an inch—*i. e.*, the superstructure; but having about two feet of basement or foundation thereon.

There was a good deal of proof adduced to show that the wall in controversy, and which was anciently an *outer* wall, gave evidences of its having been *used* as a party wall; but, as our opinion is that the facts stated constitute it in law a party wall, it is needless to discuss this question. R. C. C. 677, 685.

The acts, conduct and apparent acquiescence of the parties and their authors are in keeping with the view we entertain of the testimony. It seems to have impressed the judge of the court below as it has impressed us. There is no reason apparent why we should alter his finding.

Judgment affirmed.

Rehearing refused.